UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 1:10CR40 SNLJ(LMB) |
| JOHNNIE D. MATHIS, ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The defendant, Johnnie D. Mathis, filed his Motion to Suppress, #20, requesting that the court suppress all physical evidence that the government intends to offer at his trial, including all items seized during the search conducted on August 19, 2009, as well as any oral or written statements made by the defendant in connection with the search. Both parties have filed memoranda regarding the defendant's motion to suppress. An evidentiary hearing was held before the undersigned magistrate judge on June 29, 2010, and the parties declined to submit any further memoranda following the hearing.

Defendant offers four reasons why all evidence and statements should be excluded: (1) the warrant was insufficient to establish probable cause for search of his property because the information relating to the purchasing of precursors to methamphetamine and on-going manufacturing was stale; (2) the seizure of the ammunition was beyond the scope of the search authorized by the warrant or sought by the Affidavit; (3) his statement during the arrest at his home was made prior to the administration of any warning of his rights under *Miranda v. Arizona*; and (4) his statements made during questioning were not given with a knowing and voluntary waiver of his right to remain silent.

## Factual Background

On August 2, 2009, Reynolds County 911 Center received a call from Doug Martin who reported that his neighbor, defendant Mathis, was making methamphetamine in Mathis's backyard. Mathis lived at 506 5th Street in Bunker, Missouri, and Martin lived in a house next door. On August 14, 2009, Reynolds County Deputy Sheriff Burl Campbell spoke with Martin at his home. Martin told Campbell that at approximately 9:00 a.m. on August 2, 2009, he observed Mathis in his backyard near some glass jars containing liquid and a bottle or jar projecting some tubing into the glass jars. Martin observed smoke emanating from the liquid, and concluded that Mathis was manufacturing methamphetamine at his residence. Martin confronted Mathis about manufacturing methamphetamine because he was afraid that his children would be able to see it. Two days after the confrontation, Martin again observed Mathis in his backyard with jars, tubing and a fan, and the jars with liquid were again emanating smoke. Aware that the end stage of methamphetamine manufacture involves the conversion of methamphetamine from a liquid form to a powder form via gas generator, a process known as "smoking off," Deputy Sherriff Campbell determined that these descriptions were consistent with a person manufacturing methamphetamine.

Campbell continued his investigation, and discovered that Mathis had recently been in a Wal-Mart store in Salem, Missouri and purchased Coleman Lantern Fuel, a known precursor to methamphetamine. Campbell also determined that Mathis's stepson, Dustin McNail, purchased pseudoephedrine tablets from the same store. Campbell then looked at the pharmacy logs for various sellers of pseudoephedrine in the area who are required to maintain purchase logs for people buying pseudoephedrine. Those logs revealed that Lacey McNail, Dustin's sister, had purchased pseudoephedrine pills on July 24, 2009, and August 1, 2009. The purchase logs also

revealed that Mathis had purchased pseudoephedrine on July 23, 2009, and Dustin McNail had purchased pseudoephedrine on August 3, 2009. The quantities of pseudoephedrine purchased by the McNails and Mathis would produce approximately seven grams of methamphetamine.

On August 18, 2009, Campbell requested a state search warrant to search the Mathis residence for methamphetamine and articles associated with manufacturing methamphetamine. Reynolds County judge Edith Rutter granted that search warrant, and Campbell, Sheriff Tom Volner, and other officers executed the warrant on August 19, 2009.

Campbell and Volner went to the front door of the Mathis residence and knocked and announced their presence. The officers waited approximately ten to fifteen seconds, then knocked again, calling out, "Sheriff's Office. Search Warrant." The officers heard movement from inside the home, but the sounds indicated that people were moving away from the front door, not toward it. The officers turned the door knob, and finding the door unlocked, opened it. Volner and Campbell entered the home to find Dustin McNail in the living room. Laurie Mathis was in the bathroom, washing her face in a hurried fashion. The toilet was flushing and there were items in the toilet. Johnnie Mathis was located in the master bedroom of the home. All three subjects were handcuffed and placed in the living room of the home. The officers read the search warrant to Mathis and began their search. During the search, the officers found, and seized, many items associated with the use or manufacture of methamphetamine and marijuana. The officers also found a bag containing thirteen boxes of 9mm caliber ammunition on a shelf in the laundry room.

As the officers were leaving the residence, Johnnie Mathis stated that everything in the residence belonged to him and that no one else lived in the residence. The officers had not asked

3

any questions of Mathis prior to this statement. However, the officers had discovered several items that indicated that Mathis's wife and Dustin McNail lived in the residence.

On August 20, 2009, ATF Special Agent John Taylor and Campbell interviewed Mathis at the Reynolds County Sheriff's Office. Mathis had been arrested the previous day after the search warrant was executed. Taylor read a form to Mathis advising Mathis of his *Miranda* rights. Mathis told Taylor that he understood his rights, but he refused to sign the *Miranda* waiver form.

Taylor began by telling Mathis that he was investigating the theft of some 9mm ammunition from a location in Bunker, Missouri. The ammunition involved in that case was the same caliber as was found in the Mathis home. That ammunition was stolen in a burglary on August 15, 2009. Taylor asked Mathis if Mathis could state that he had the ammunition in his home prior to August 15, 2009. Mathis denied stealing the ammunition, and stated that he had purchased the ammunition approximately three weeks prior to the date of the interview. Mathis said that he stopped at a sign advertising wicker baskets for sale. The seller of those baskets had the ammunition for sale for $50.00. Mathis said he bought the ammunition for a family member, but had not yet delivered it. Mathis did not have a receipt for the ammunition. The interview was then concluded.

## Discussion

Defendant makes four arguments as to why all seized evidence and statements should be excluded: (1) the warrant was insufficient to establish probable cause for search of his property because the information relating to the purchasing of precursors to methamphetamine and on-going manufacturing was stale; (2) the seizure of the ammunition was beyond the scope of the search authorized by the warrant or sought by the Affidavit; (3) his statement during the arrest at

his home was made prior to the administration of any warning of his rights under *Miranda v. Arizona*; and (4) his statements made during questioning were not given with a knowing and voluntary waiver of his right to remain silent.

## Staleness of the Information in the Search Warrant Affidavit

Defendant first argues that the search warrant was insufficient to establish probable cause for the search of his property because the information regarding the manufacture of methamphetamine and the purchase of amphetamine precursors was "stale." The Government asserts that the information was not so stale as to make the search warrant invalid, and furthermore, the officers relied in good faith on the issuance of the search warrant.

To issue a valid warrant, an impartial judicial officer must assess whether the police have probable cause to make an arrest, conduct a search, or seize evidence, instrumentalities, fruits of a crime, or contraband. *See Warden v. Hayden*, 387 U.S. 294, 301-02 (1967). "Probable cause must exist when a warrant is issued, not merely at some earlier time, but there is no bright-line test for determining when information is stale." *U.S. v. Morrison*, 594 F.3d 626, 631 (8th Cir. 2010)(quoting *United States v. Jeanetta*, 533 F.3d 651, 655 (8th Cir. 2008)). "Time factors must be examined in the context of a specific case and the nature of the crime under investigation." *Id.* (quoting *United States v. Caswell*, 436 F.3d 894, 898 (8th Cir. 2006)). "[W]here continuing criminal activity is suspected, the passage of time is less significant." *Id.* (quoting *Jeanetta*, 533 F.3d at 655). "In investigations of ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant does not necessarily make the information stale." *Id.* (quoting *Jeanetta*, 533 F.3d at 655).

In the case at hand, the affidavit was received and the warrant issued on August 18, 2009. The affidavit contained information that Mathis and his stepchildren had purchased

pseudoephedrine pills on July 23 and 24 and on August 1 and 3. Martin witnessed Mathis "smoking off" methamphetamine in his backyard on August 1 and 3. Deputy Campbell spoke with Martin about these details for the first time on August 14, when he started his investigation, and applied for the warrant four days later.

The oldest information contained in the affidavit was the pseudoephedrine purchase on July 23, which was three and a half weeks prior to the issuance of the search warrant. Although any pseudoephedrine purchased by Mathis or his stepchildren would likely have been fully manufactured before August 18, the search warrant authorized a search not only for finished methamphetamine, but the materials used to manufacture methamphetamine, and any records showing the purchase of precursor materials. Furthermore, the affidavit describes actions of Mathis and his stepchildren involving methamphetamine production for a period of time of a week or more. Considering that there was evidence of an ongoing narcotics operation, and a search of Mathis's home was likely to find materials and equipment used in methamphetamine manufacture, there was sufficient probable cause for a warrant despite the lapse of two weeks between the last act attributed to defendant and the issuance of the warrant. The information contained in the search warrant affidavit was not stale, but timely in light of the circumstances.

### Scope of the Search

Defendant argues that the officers exceeded the scope of the search authorized by the search warrant when they searched the bag containing ammunition. The Government maintains that the officers were entitled to look in any area, including within bags on laundry shelves, that might contain items listed in the search warrant.

"A lawful search extends to all the areas and containers in which the object of the search may be found." *United States v. Weinbender*, 109 F.3d 1327, 1329 (8th Cir. 1997). The warrant

authorizes a search within defendant's residence, "[a]s well as all spaces therein and the curtilage thereof." Specifically, the search warrant authorized the officers to look for "methamphetamine, scales or other weighing or measuring devices, equipment, products or materials of any kind which are used, intended to be used, or designed for use in the manufacturing, compounding, converting, producing, processing, preparing, containing, storing, of [sic] concealing methamphetamine; owe sheets, electronic recording devices used for the purpose of keeping records of customers and/or supplies, records of customers and amounts due for purchases of methamphetamine, books that contain the names or addresses of suppliers of methamphetamine, miscellaneous evidence which can be identified as being utilized to assist in the distribution of methamphetamine, and United States currency." Any of these items could reasonably be expected to be found within a large green bag sitting on a shelf in the defendant's laundry room. The officers did not exceed the authorization of the search warrant by searching the green bag in question. Once the officers observed the ammunition and determined it to be the same caliber as the recently stolen ammunition under investigation, (Tr. 35, 36, 44) it was properly seized.

## Statement made by Mathis to Sheriff Volner

Defendant next argues that his statement made while being escorted from his house should be excluded because he had not yet received his *Miranda* warning. Mathis stated, without prompting, that everything in the residence belonged to him and that no one else lived in the residence. "*Miranda* bars only statements made by a defendant in custody that have not been preceded by a proper warning and that are made in response to interrogation. It does not preclude admission of statements that a defendant in custody volunteers and that are not the product of any interrogation by the police." *United States v. Waloke*, 962 F.2d 824, 829 (8th Cir. 1992)(citing *Rhode Island v. Innis*, 446 U.S. 291, 299-301, 100 S.Ct. 1682, 1688-90, 64 L.Ed.2d 297 (1980)).

7

There are no facts in evidence to suggest that Mathis's statement was anything but completely voluntary and freely given without prior prompting from the officers.

### Statement made by Mathis to ATF Special Agent John Taylor

Defendant finally argues that the statements made during an interview on August 20, 2009, should be excluded because defendant did not sign any acknowledgment of understanding, receiving, or waiving his rights under *Miranda* to remain silent or to have a lawyer present during questioning. Defendant was in custody at the Reynolds County Sheriff's Department while he was being questioned by Special Agent Taylor of the Bureau of Alcohol, Tobacco, and Firearms. Defendant maintains that because he never signed the form, his statements should be excluded despite his willingness to respond to the questions during interrogation. The Government argues that although defendant declined to sign a waiver form, he agreed that he understood his rights and that he would make a statement. "He said he would talk to me, but he was not going to sign anything." (Tr. 44). The Government maintains that Mathis was given a valid *Miranda* warning prior to any questioning by Taylor and that Mathis knowingly and intelligently waived his rights.

A defendant's refusal to sign a waiver form is not the equivalent of a statement indicating that he does not wish to answer questions, and a waiver may be inferred from the fact that the a defendant responded to questions posed by the interviewer after being advised of his rights. *U.S. v. House*, 939 F.2d 659, 662-63 (8th Cir. 1991)(citing *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)). *House* explained:

> In *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), the Supreme Court rejected the suggestion that a defendant must explicitly waive *Miranda* rights before a confession is admissable. In that case, like this one, the defendant declined to sign the waiver form but proceeded to answer questions presented by the officers. The court in *Butler* emphasized that questions concerning waiver are not susceptible to *per se* rules but must be reviewed based

8

on the circumstances surrounding the interrogation. In this case, the defendant's refusal to sign a waiver form was not the equivalent of a statement indicating that he did not wish to answer questions. *See United States v. McKinney*, 758 F.2d 1036, 1044 (5th Cir. 1985)(citing cases and holding that failure to sign waiver is not invocation of rights). Moreover, waiver may be inferred from the fact that the defendant responded to questions posed by the interviewer after being advised of his rights. *Butler*, 441 U.S. at 373, 99 S.Ct. at 1757 (although silence does not constitute waiver, silence coupled with an understanding of rights and a course of conduct suggesting waiver may be enough to prove waiver). *Martin v. United States*, 691 F.2d 1235, 1239 (8th Cir. 1982)(waiver may be inferred from circumstances), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983). As a result, the statements defendant made were properly admitted against him.

*Id.*

In the case at hand, defendant was informed of his *Miranda* rights and proceeded to respond to questioning despite refusing to sign a waiver. The court finds that the defendant, by voluntarily making the statements during the interrogation on August 20, 2009, after having been given the *Miranda* warnings, waived his right to remain silent under *Miranda*.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence (Document #20) be denied.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Dated this 7th day of September, 2010.

_____
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE